Troy BROWN, Petitioner,

v.

John KEANE, Superintendent, Wood-
bourne Correctional Facility, and Eli-
ot Spitzer, Attorney General of the
State of New York, Respondents.

No. 02 Civ. 0350(LAK).

United States District Court,
S.D. New York.

Oct. 31, 2002.

John Schoeffel, The Legal Aid Society, Criminal Appeals Bureau, for Petitioner.

Rafael A. Curbelo, Assistant District Attorney, Robert T. Johnson, District Attorney of Bronx County, for Respondents.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the ground that a state trial court violated his Confrontation Clause rights in admitting, under the present sense impression exception to the hearsay rule, a tape recording of an anonymous 911 call.

### Facts

Petitioner Troy Brown was convicted in New York State Supreme Court, Bronx County, on August 19, 1997 of one count of attempted aggravated assault upon a police officer[1] and sentenced to an indeterminate prison term of seven to fourteen years. He appealed alleging, *inter alia,* that admission of the anonymous 911 call violated his Confrontation Clause and Due Process rights. On June 12, 2001, the Appellate Division, First Department, affirmed, stating summarily that "there was no violation of defendant's right of confrontation" because the 911 tape had " 'particularized guarantees of trustworthiness' drawn from the circumstances of the making of the statement."[2] It did not reach the question of whether the present sense impression is a " 'firmly rooted hearsay exception.' "[3] On September 10, 2001, the New York Court of Appeals denied petitioner leave to appeal.[4]

The events that formed the basis of petitioner's indictment unfolded as follows:

The owner of a bodega in the Bronx paged undercover Housing Police officers and informed them that two black men wearing green army jackets and hats and carrying guns had just left his store and entered the nearby Phoenix Bar.[5] An undercover Housing Police Anti–Crime Unit positioned itself outside of the bar to watch for the suspects.[6] When two black men wearing green army jackets exited the Phoenix Bar, the officers approached them.[7]

According to the trial testimony of two of the officers, they pulled out their shields

---

1. Trial Transcript ("Tr.") 2096–97. The jury acquitted petitioner of two counts of first-degree attempted murder, two counts of second-degree attempted murder, one count of attempted aggravated assault upon a police officer, and one count of attempted first-degree assault. Tr.2095–97. In accordance with the court's instructions, the jury did not reach a weapon possession charge or a second count of attempted assault in the first degree. Tr.2022–23.

2. *People v. Brown,* 284 A.D.2d 156, 156, 726 N.Y.S.2d 252, 252 (1st Dept.2001) (quoting *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)).

3. *Id.*

4. *People v. Brown,* 96 N.Y.2d 938, 938, 733 N.Y.S.2d 378, 378 (2001).
 The timeliness of petitioner's habeas petition is not in dispute.

5. Tr. 89–93, 430–33, 1340–42, 1391.

6. Tr. 317–18, 433–34.

7. Tr. 302–04, 438–39.

and announced that they were police.[8] The officers saw petitioner, who was holding a semiautomatic pistol, raise his arm.[9] They then saw a muzzle flash and heard a shot, whereupon one of the officers fired three shots and the other fired four, both from distances of 10 to 20 feet.[10]

According to the defense, petitioner never fired his weapon. Rather, the officers "precipitately" shot at him seven times without good cause and then concocted petitioner's shot in an effort to coverup their mistake.[11] It was undisputed that neither officer was hit or wounded by a gunshot.[12]

There were three types of evidence relevant to the question of whether petitioner shot at the police officers. The first was the testimony of eye witnesses, which was not without problems. The two officers who shot at petitioner and his companion both refused to make a statement on the night of the shooting.[13] At trial, both testified that petitioner shot at them first, but neither could recall whether petitioner had pointed his left or right arm at them when he fired the weapon.[14] Both testified that only petitioner had fired a shot.[15] However, in an application for official commendation submitted by the Housing Police Anti-Crime Unit, the officers who fired at the men in green claimed that *both* men in green had shot at them.[16]

Another officer who reported to the scene, and who stated that he had a "clear unobstructed view" of the events, saw one of the men in green raise his arm and point in the direction of the two officers and then heard a "bang." [17] This officer, however, did not see whether either of the men in green had a weapon in his hand and did not see petitioner or his companion fire a shot.[18]

The second category of relevant evidence was the physical evidence recovered from the scene. Police investigators recovered all seven shell casings that were discharged by the officers [19] but did not recover any discharged shell casings or bullets that matched petitioner's weapon.[20]

8. Tr. 302, 438.

9. *Id.*

10. Tr. 302–04, 438–39.

11. Pet. Mem. 3.

12. Tr. 236.

13. Tr. 404–05, 729–30.

14. Tr. 357, 508.

15. Tr. 302–03, 438, 640.

16. Tr. 415, 638–51, 728–29, 1578–79.

17. Tr. 94–96.

18. Tr. 167–68, 185, 198–99.

19. Tr. 833–34. Three of these casings were recovered 92 to 94 feet away from the location of the shooting. Tr. 1066–67.

20. Tr. 833–34. There was conflicting testimony about whether petitioner's weapon may have misfired. One crime scene investigator may have noted on a report, which was not admitted into evidence, that there was a primer indent on one round later removed from petitioner's weapon. Tr. 1616–17. A primer hit may indicate that a bullet misfired. Tr. 1617. When the officer who allegedly made this notation testified at trial, he was not asked about, nor did he advance this theory. Tr. 1012–14. Another officer who had read the report testified that the report reflected that one of the rounds had a primer indent, although he had no firsthand knowledge of the existence of any primer indent. Tr. 1616–17. The weapon did not misfire when a police ballistics expert test fired it, and pictures of the ammunition taken from the weapon did not reveal a primer indent. Tr. 907, 1013. The police ballistics expert who test fired the weapon did not observe any primer indents on any of the rounds. Tr. 915–16. If the weapon indeed had misfired, there would not

The final relevant evidence, and the focus of this petition, was the anonymous 911 tape that the trial court admitted over the defense's objection under the present sense impression exception to the hearsay rule.[21] The court instructed the jury that it could consider the evidence on the tape "exactly as you would listen to a witness on the witness stand."[22]

There are no gunshots audible on the tape. The transcript of the 911 tape is as follows:

Operator ("O"): Police Operator 1077, where is your emergency?

Anonymous Male Caller ("A"): Yeah, 1411 Bronx River Avenue. Guy's got a gun. Two guys in green coats.

O: Okay, one moment.

A: It's an emergency, 'cause they shooting.

O: Are they in front of the building?

A: Yeah, right in front.

O: But they shooting at each other?

A: Yeah, 1411 Bronx River Avenue. They're trying to get in the bar.

O: Between 173rd and 174th. Are they Black, White or Hispanics?

A: Both light-skinned blacks. Both have green coats on.

O: Wearing green coats. And they're shooting?

A: Right at the bar, at the Phoenix.

O: At the Phoenix Bar?

A: Yeah, you got to get someone over here quick now.

O: I've already put this call in, sir. Are they shooting at each other?

A: No, they're trying to shoot at the door of the bar, trying to get in the bar.

O: To the Phoenix Bar, right?

A: Right.

O: Trying to get in.

A: Can you hurry, please.

O: Sir, I've already put the call in, I'm not . . .

A: Alright.

O: Okay, you want to leave your name and your number?

A: No, that's alright.

O: Police'll be there.

A: Thanks.[23]

The call was received at 12:13 a.m. The officers began waiting for the men in green outside of the bar at approximately 12:05 a.m. and approached them at about 12:10 a.m.[24]

### I. Petitioner's Confrontation Clause Rights

The Confrontation Clause of the Sixth Amendment, made applicable to the states through the Fourteenth Amendment, provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."[25] Its purpose is to "ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceed-

have been a muzzle flash as recounted by two of the officers. Tr. 854–55.

21. Tr. 1226–32. Petitioner's trial counsel timely objected on Confrontation Clause grounds to the introduction of the tape and properly preserved this objection at every stage of direct review. Tr. 275–76, 289, 1183–85.

22. Tr.1962.

23. People's Ex. 20.

24. Tr. 299, 318.

25. U.S. Const., amends. VI, XIV; *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) (applying Confrontation Clause of the Sixth Amendment to the states).

ing before the trier of fact."[26] Furthermore, the Supreme Court has emphasized that "the Confrontation Clause reflects a preference for face-to-face confrontation at trial and that 'a primary interest secured by [the provision] is the right to cross-examination.' "[27]

■ Although the hearsay rule and the Confrontation Clause generally are designed to protect similar values, they are not coextensive. Rather, "[t]he Confrontation Clause ... bars the admission of some evidence that would otherwise be admissible under an exception to the hearsay rule."[28] Conversely, "merely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied."[29] The Supreme Court has determined, however, that certain categories of hearsay statements "rest upon such solid foundations that admission of virtually any evidence within them comports with the 'substance of the constitutional protection.' "[30] Specifically, statements falling under "firmly rooted" hearsay exceptions automatically satisfy the Confrontation Clause because they bear adequate " 'indicia of reliabili-

ty.' "[31] Alternatively, hearsay statements that have " 'particularized guarantees of trustworthiness' such that adversarial testing would be expected to add little, if anything, to the statements' reliability" satisfy the Confrontation Clause.[32]

The Appellate Division summarily affirmed the trial court's admission of the 911 tape, finding that there was no Confrontation Clause problem because the tape had "particularized guarantees of trustworthiness." It therefore did not decide whether the present sense impression hearsay exception is firmly rooted.

## II. The Appropriate Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief may be granted:

"on behalf of a person in custody pursuant to the judgment of a State court ... with respect to any claim that was adjudicated on the merits in State court proceedings ... [provided] adjudication of the claim–

"(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

---

26. *Maryland v. Craig,* 497 U.S. 836, 845; 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).

27. *Roberts,* 448 U.S. at 63, 100 S.Ct. 2531 (internal citation omitted).

28. *Idaho v. Wright,* 497 U.S. 805, 814, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990).

29. *California v. Green,* 399 U.S. 149, 156, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).

30. *Roberts,* 448 U.S. at 66, 100 S.Ct. 2531 (internal citation omitted). *Accord Lilly v. Virginia,* 527 U.S. 116, 124–25, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (plurality opinion).

31. *Id.*
The Supreme Court requires also, in some cases, a showing that the out-of-court declarant is unavailable to testify. *United States v.*

*Inadi,* 475 U.S. 387, 394, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986) (stating that the unavailability requirement applies to prior testimony exception). The Court has found, however, that the unavailability requirement does not apply to certain categories of hearsay statements. *E.g., White v. Illinois,* 502 U.S. 346, 356 n. 8, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (excited utterances and statements for medical treatment); *Inadi,* 475 U.S. at 399, 106 S.Ct. 1121 (co-conspirator statements). It is undisputed that the anonymous 911 caller was unavailable within the meaning of the Confrontation Clause.

32. *Lilly,* 527 U.S. at 125, 119 S.Ct. 1887 (quoting *Roberts,* 448 U.S. at 66, 100 S.Ct. 2531).

Supreme Court of the United States...." [33]

The scope of deferential review under AEDPA now is reasonably clear. The Supreme Court has interpreted Section 2254(d)(1) to give independent meaning to both the "contrary to" and "unreasonable application" clauses of the statute.[34] A state court decision is "contrary to" Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the] Court on a question of law" or if it "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Court.[35] A state court decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal rule ... but unreasonably applies it to the facts" of a particular case or if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." [36]

Petitioner concedes that the "contrary to" clause of section 2254(d)(1) is inapplicable to his case.[37] Thus, the question at hand is whether the Appellate Division's decision "unreasonably applied" the perti-

nent Supreme Court authorities on the circumstances in which a hearsay statement has particularized guarantees of trustworthiness. To be considered "unreasonable," the state court's application of law must be more than incorrect or erroneous [38]—it must be objectively unreasonable.[39] On the other hand, the increment of incorrectness "need not be great." [40] Because the Appellate Division failed to decide the question whether the present sense hearsay exception is firmly rooted, the Court may review this claim *de novo*.[41]

### III. Is the Present Sense Impression Hearsay Exception Firmly Rooted?

If the 911 caller's statement that men in green jackets were shooting fell within a firmly rooted hearsay exception, its admission did not violate the Confrontation Clause. As noted, this Court's review of this question is *de novo*.[42]

The Supreme Court has not decided whether the present sense impression is firmly rooted. The Second Circuit, however, in *United States v. Jones*,[43] suggested, albeit perhaps not definitively, that it is.

*Jones* involved, among other issues, the question whether out-of-court statements

---

**33.** 28 U.S.C. § 2254(d)(1).

**34.** *Williams v. Taylor*, 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

**35.** *Id.* at 405, 120 S.Ct. 1495.

**36.** *Lainfiesta v. Artuz*, No. 99 Civ. 11428(LAK), 2000 WL 1459800, at *2 (S.D.N.Y. Sept.29, 2000) (quoting *Williams*, 529 U.S. at 407, 120 S.Ct. 1495), *aff'd*, 253 F.3d 151 (2d Cir.2001), *cert. denied*, — U.S. —, 122 S.Ct. 1611, 152 L.Ed.2d 625 (2002).

**37.** Pet. Mem. 19.

**38.** *Williams*, 529 U.S. at 410–11, 120 S.Ct. 1495.

**39.** *Id.* at 409, 120 S.Ct. 1495.

**40.** *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir.2000).

**41.** When a claim has not been adjudicated on the merits, the pre-AEDPA standard of review applies. *See Hines v. Miller*, 156 F.Supp.2d 324, 329 (S.D.N.Y.2001) (LAK) (citing *Washington v. Schriver*, 255 F.3d 45, 52–55 (2d Cir.2001)). Prior to the AEDPA, questions of law were reviewed *de novo*. *See Williams*, 529 U.S. at 400, 120 S.Ct. 1495 (opinion of O'Connor, J.).

**42.** *See* supra note 41.

**43.** 299 F.3d 103, 113 (2d Cir.2002).

by a witness' wife and daughter properly had been received at a supervised release revocation hearing.[44] The district court admitted the statements under the present sense impression and excited utterance exceptions to the hearsay rule.[45] The defendant challenged that ruling as a Confrontation Clause violation on appeal from an order revoking supervised relief. The Second Circuit, however, affirmed. It rejected the Confrontation Clause argument, referring approvingly to the district court's determination that the out-of-court statements were reliable and stating also that the testimony in question was "covered by 'firmly rooted' *exceptions* to the hearsay rule."[46] It thus suggested that it regarded both hearsay exceptions relied upon below as "firmly rooted," although the case it cited for that proposition, *White v. Illinois*,[47] dealt only with the exceptions for excited utterances and statements made for purposes of medical diagnosis or treatment.[48]

If *Jones* statement concerning the present sense exception were a holding, this Court of course would be duty bound to

follow it.[49] It is not clear, however, that it is.

*Jones* concerned the admissibility of evidence at a supervised release revocation hearing, not a trial. The "full range of procedural safeguards associated with a criminal trial" does not apply to revocation hearings, however, because the individual on release "already stands convicted of a crime."[50] The rules of evidence need not apply,[51] and the defendant enjoys only limited due process rights.[52] While these usually include "the right to confront and cross-examine adverse witnesses," confrontation may be dispensed with if "the hearing officer finds good cause" for doing so.[53] In view of the fact that the district court found the evidence to be reliable, a conclusion that the Court of Appeals approved, the Circuit's comment that *both* hearsay exceptions at issue were "firmly rooted" arguably was not necessary to the result. The reliability finding may well have been sufficient to satisfy both Rule 32.1(a)(2) and the Due Process Clause.

■ To be sure, the fact that the panel's statement was or, at least, may not have been a holding under the Confronta-

44. *Id.* at 112–13.

45. *Id.*

46. *Id.* at 113–14 (emphasis added).

47. 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992).

48. *Id.* at 356 n. 8, 112 S.Ct. 736. Indeed, in concluding that the excited utterances exception is "firmly rooted," the *White* Court relied upon Wigmore (citing to 6 WIGMORE, EVIDENCE § 1747 (James H. Chadbourn rev.1976)), which rejects as unsound the present sense impression exception at issue in this case. 6 WIGMORE, EVIDENCE § 1757, p. 238 (James H. Chadbourn rev. 1976) ("To admit hearsay testimony simply because it was uttered at the time something else was going on is to introduce an arbitrary and unreasoned test and to remove all limits of principle. . . . ").

49. *United States v. Jacobs*, 955 F.2d 7, 9 (2d Cir.1992) (a "lower court must adhere to the decision of a higher court even where it disagrees or finds error in it."). *See also Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 508 (2d Cir.1996) (a court's observations that are " 'unnecessary to the disposition of the case before it' " are dicta).

50. *United States v. Sanchez*, 225 F.3d 172, 175 (2d Cir.2000) (internal citations omitted).

51. FED. R.CRIM. P. 32.1(a)(2), 1979 advisory committee's note.

52. *Morrissey v. Brewer*, 408 U.S. 471, 488–89, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

53. *Id.* at 489, 92 S.Ct. 2593. *Accord Sanchez*, 225 F.3d at 175.

tion Clause does not strip it of significance for this Court, for considered dicta "must be given considerable weight and cannot be ignored in the resolution" of close questions.[54] Nevertheless, this Court is "not necessarily bound to follow" "judicial dictum."[55] The prudent course therefore is to make an independent analysis of the "firmly rooted" issue against the possibility that the Circuit would regard the question as remaining open notwithstanding *Jones.*

A hearsay exception is firmly rooted "if, in light of 'longstanding judicial and legislative experience,' it 'rest[s][on] such [a] solid foundatio[n] that admission of virtually any evidence within [it] comports with the 'substance of the constitutional protection.' "[56] Moreover, a statement that qualifies for admission under a firmly rooted hearsay exception must be "so trustworthy that adversarial testing can be expected to add little to its reliability."[57] The Supreme Court has explained that "[t]his standard is designed to allow the introduction of statements falling within a category of hearsay whose conditions have proved over time 'to remove all temptation to falsehood, and to enforce as strict an adherence to the truth as would the obligation of an oath' and cross-examination at trial."[58] The factors relevant to determining whether a hearsay exception is firmly rooted include its age and degree of acceptance among courts and legislatures.[59] The Court therefore begins with the resolution of this question by other courts.

The few federal decisions to consider the issue have divided, although a majority has found that the present sense impression is firmly rooted.[60] Most of the state courts

---

**54.** *United States v. Bell,* 524 F.2d 202, 206 (2d Cir.1975).

**55.** *Id.* at 206 n. 4.

**56.** *Lilly,* 527 U.S. at 126, 119 S.Ct. 1887 (internal citations omitted).

**57.** *White,* 502 U.S. at 357, 112 S.Ct. 736 (internal citations omitted).

**58.** *Id.*

**59.** *White,* 502 U.S. at 356 n. 8, 112 S.Ct. 736 (stating that hearsay exceptions for excited utterances and statements made for purposes of medical diagnosis and treatment are firmly rooted). *See also Wright,* 497 U.S. at 817, 110 S.Ct. 3139 (stating that Idaho's residual hearsay exception was not firmly rooted); *Bourjaily v. United States,* 483 U.S. 171, 183, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987) (finding co-conspirator exception firmly rooted).

**60.** *Reedus v. Stegall,* 197 F.Supp.2d 767, 778 (E.D.Mich.2001) ("The present sense impression exception to the hearsay rule is firmly-rooted."); *Guam v. Ignacio,* DCA No. 91–00107A, 1992 WL 245633, at *3 (D. Guam App. Div. Sept. 11, 1992) (holding that present sense impression is firmly rooted), *aff'd on other grounds,* 10 F.3d 608, 614 (9th Cir.1993) (failing to reach whether present sense impression exception is firmly rooted because statement had particularized guarantees of trustworthiness);· *Brown v. Tard,* 552 F.Supp. 1341, 1351 (D.N.J.1982) (stating that reliability for Confrontation Clause purposes may be inferred when statement falls within the present sense impression exception to the hearsay rule). *But see United States v. Murillo,* 288 F.3d 1126, 1137 (9th Cir.2002) ("The government admits that there is no case law holding the present sense impression exception to the rule against hearsay is 'firmly rooted.' "). A number of other federal courts have concluded, in unpublished opinions, that the present sense impression is firmly rooted. *See United States v. King,* 133 F.3d 918, 1997 WL 791686, at *1 (4th Cir. Dec.29, 1997) (present sense impression is firmly rooted); *United States v. Vega,* 883 F.2d 1025, 1989 WL 95475, at *4 (9th Cir. Aug.16, 1989) ("[T]he present sense impression exception to the hearsay rule is an ancient and well-established doctrine evidence 'which falls within a firmly rooted hearsay exception.' "). The Ninth Circuit's unpublished decision in *Vega* is undercut, of course, by *Murillo.*

have reached the same conclusion,[61] with but one finding to the contrary.[62] Unfortunately, however, few if any of these decisions have devoted much analysis to the question, thus undermining their persuasive effect and suggesting studied consideration.

The hearsay exceptions the Supreme Court has recognized to be firmly rooted include dying declarations,[63] statements made in securing medical treatment,[64] and excited utterances.[65] The Court has found also that co-conspirators' statements, which are exempt from the definition of hearsay in federal practice and often a hearsay exception under state law, are firmly rooted.[66] The hearsay exception for dying declarations is based on the premise that " 'men are not apt to lie in the shadow of death" ' and thus that such statements have circumstantial guarantees of trustworthiness that make cross-examination unnecessary.[67] Likewise, the rationale underlying the exception for statements made to obtain medical diagnosis or treatment is that "the declarant's motive guarantees their trustworthiness, since the declarant has a 'motive to disclose the truth because his treatment will depend in part upon what he says.' " [68] The exception for excited utterances is premised on the notion that "a person under the sway of excitement precipitated by an external startling event will not have the reflective capacity essential for fabrication." [69] Among the rationales for the exemption from the definition of hearsay for co-conspirator statements is that "such statements provide evidence of the conspiracy's context that cannot be replicated, even if the declarant testifies to the same matters in court." [70]

The present sense impression exception is based on a premise that is similar but not identical to that for excited utterances. "[T]he contemporaneity of [an] event and its description" is thought to "limit[ ] the possibility for intentional deception or failure of memory." [71] The declarant's statement must be contemporaneous with, or made shortly after, perceiving the event or condition, whereas for excited utterances, the standard of measurement is the duration of the state of excitement.[72]

---

61. *See, e.g., Green v. St. Francis Hosp., Inc.*, 791 A.2d 731, 736 (Del.2002) ("The present sense impression is a hearsay exception that is firmly rooted under the confrontation provisions of the Delaware and federal constitutions."); *Michigan v. Hendrickson*, 459 Mich. 229, 586 N.W.2d 906, 910 (Mich.1998) (present sense impression is firmly rooted); *Arizona v. Wooten*, 193 Ariz. 357, 972 P.2d 993, 1002 (Ariz.Ct.App.1998) (same); *Louisiana v. Brown*, 618 So.2d 629, 634 (La.Ct.App.1993) (same).

62. *See People v. Cook*, 159 Misc.2d 430, 438, 603 N.Y.S.2d 979, 984 (N.Y.Sup.Ct.1993) ("Whatever definition is used for the 'firmly rooted' test, 'present sense impression' does not comply."), *aff'd*, 220 A.D.2d 522, 632 N.Y.S.2d 193 (2d Dept.1995).

63. *Roberts*, 448 U.S. at 66 n. 8, 100 S.Ct. 2531.

64. *White*, 502 U.S. at 356 n. 8, 112 S.Ct. 736.

65. *Id.*

66. *Bourjaily*, 483 U.S. at 182, 107 S.Ct. 2775.

67. 5 WEINSTEIN'S FEDERAL EVIDENCE § 804.05[1] (2d ed.2002) (internal citation omitted).

68. *Id.* at § 803.09[1] (internal citation omitted).

69. *Id.* at § 803.04[1].

70. *Inadi*, 475 U.S. at 395, 106 S.Ct. 1121.

71. *Jones*, 299 F.3d at 112.

72. FED.R.EVID. 803, 1972 advisory committee's note. Thus, excited utterances qualify also as present sense impressions when the declarant makes his or her statement at the same time as, or nearly contemporaneously with, the startling event or condition, whereas

The rationale for the present sense impression exception is not beyond serious question. Dean Wigmore, among others, rejected it because, in his view, mere contemporaneity of event and declaration, without the shock of a startling or stressful event, is insufficient to guarantee trustworthiness.[73] Nevertheless, the Wigmore position implicitly has been rejected by many courts and legislatures. The exception was codified in the Federal Rules of Evidence in 1975[74] and has been codified or recognized by at least 40 states,[75] including New York.[76] Moreover, this broad acceptance is not a recent phenomenon.

The present sense impression exception originated in the broader, and now disfavored, *res gestae* doctrine, which came into usage in the early 1800s.[77] Courts used the *res gestae* doctrine to admit over hearsay objection declarations of present bodily condition and mental states and emotions, excited utterances, and present sense impressions.[78]

Cases applying the *res gestae* doctrine to admit present sense impressions date back at least as early as 1897. For example, in *Missouri, Kansas & Texas Railway Co. v. Vance*, the court affirmed as *res gestae* the admission of a bystander's contemporane-

present sense impressions generally do not qualify as excited utterances because the requirement of excitement will not have been met.

**73.** 6 Wigmore, Evidence § 1757, p. 238 (James H. Chadbourn rev.1976). Others have questioned the soundness of the excited utterance exception, suggesting that individuals, while under the sway of stress or excitement, tend to make less reliable statements. 2 McCormick on Evidence § 272 (John W. Strong ed., 5th ed.1999).

**74.** Fed.R.Evid. 803(1); Rules of Evidence for United States Courts and Magistrates, Pub.L. No. 93–595, § 1, 88 Stat. 445 (January 2, 1975) (codified at 28 U.S.C.).

**75.** David F. Binder, Hearsay Handbook Fourth Edition § 8.2 (4th ed.2001) (citing evidence codes or rules of forty states that have adopted present sense impression hearsay exception).

**76.** *People v. Brown*, 80 N.Y.2d 729, 731, 594 N.Y.S.2d 696, 697, 610 N.E.2d 369 (1993) ("the present sense impression is the law in this State...."). *See also People v. Vasquez*, 88 N.Y.2d 561, 574–75, 647 N.Y.S.2d 697, 702–03, 670 N.E.2d 1328 (1996).

Fed.R.Evid. 803(1) is similar to New York's present sense impression rule, although New York requires that the hearsay statement be corroborated. *Vasquez*, 88 N.Y.2d at 575–76, 647 N.Y.S.2d at 703–04, 670 N.E.2d 1328; *Brown*, 80 N.Y.2d at 734, 594 N.Y.S.2d at 700, 610 N.E.2d 369. Accordingly, state-

ments that satisfy New York's rule necessarily satisfy Fed.R.Evid. 803(1). Thus, the Court's analysis may rely on either exception.

**77.** *E.g.*, *Booth v. Maryland*, 306 Md. 313, 317, 508 A.2d 976, 977–78 (Md.1986); McCormick on Evidence § 288 (Edward W. Cleary ed., 2d ed.1972).

Judges and scholars alike have criticized the " 'convenient obscurity' " and malleability of the phrase *res gestae*. *See, e.g., United States v. Matot*, 146 F.2d 197, 198 (2d Cir.1944) ("[A]s for 'res gestae' ... if it means anything but an unwillingness to think at all, what it covers cannot be put in less intelligible terms.") (L.Hand, J.); Edmund M. Morgan, *A Suggested Classification of Utterances Admissible as Res Gestae*, 31 Yale L.J. 229, 229 (1922) ("The marvelous capacity of a Latin phrase to serve as a substitute for reasoning, and the confusion of thought inevitably accompanying the use of inaccurate terminology, are nowhere better illustrated than in the decisions dealing with the admissibility of evidence as 'res gestae.' "); James B. Thayer, *Bedingfield's Case—Declarations as a Part of the Res Gesta*, in Legal Essays 207, 244–45 (1908) ("[T]his valuable phrase did for [lawyers and judges] what the 'limbo' of the theologians did for them, what a 'catch-all' does for a busy housekeeper or an untidy one,— some things belonged there, other things might, for purposes of present convenience, be put there.").

**78.** McCormick on Evidence § 288 (Edward W. Cleary ed., 2d ed.1972).

ous remark that a train was entering a crossing without stopping.[79] Likewise, in 1921, the Supreme Court of Washington affirmed as *res gestae* the admission of a witness' spontaneous statement that a car was moving quickly on the theory that "expressions made at the time, or as a part of the accident, by any of the parties connected therewith or by bystanders, may be received in evidence."[80] The present sense impression exception, while perhaps of more recent vintage than other hearsay exceptions the Supreme Court has determined to be firmly rooted—the excited utterance exception is "at least two centuries old"[81] and the exception for statements of co-conspirators more than 150 years old[82]—nonetheless is one of long standing.

The doctrine's widespread acceptance among the states seems also to weigh in favor of a finding that it is firmly rooted, although closer examination of the state evidence codes somewhat weakens this initial impression. Many states have imposed additional requirements or limitations on the doctrine that are not found under the federal rule, including New York's requirement of corroboration by extrinsic evidence,[83] Minnesota's insistence that the declarant be subject to cross-examination,[84] and California's restriction of its use to the declarant's explanations of his or her own conduct.[85] The existence of these state variations calls into question whether "longstanding judicial and legislative experience" has established that the present sense impression exception "rest[s][on] such [a] solid foundatio[n] that admission of virtually any evidence within [it] comports with the 'substance of the constitutional protection.' "[86]

■ In sum, if this Court were writing on a clean slate, it would be a close call whether the present sense impression exception is so firmly rooted that "admission of virtually any evidence within [the exception] comports with the 'substance of the constitutional protection." '[87] Although the exception was applied at least as early as 1897 and has been adopted by at least four-fifths of the states, many states have imposed additional requirements to ensure reliability. Furthermore, it is not clear that admissibility of a hearsay statement should turn on contemporaneity alone, absent some other force or motive to ensure that the out-of-court declarant provides reliable testimony. Nevertheless, in view of the statement in *Jones* and the broad acceptance of the exception, in one form or another, by the states, this Court concludes, albeit not without hesitation, that the present sense exception is "firmly root-

---

79. 41 S.W. 167, 169 (Tex.Civ.App.1897).

80. *Heg v. Mullen,* 115 Wash. 252, 197 P. 51, 52 (Wash.1921). Although it is possible that the out-of-court statement in *Heg* was an excited utterance, the court's admission of the statement turned on the *time* it was made rather than the element of spontaneity resulting from excitement. *See also Norfolk & W. Ry. Co. v. Gesswine,* 144 F. 56, 60–61 (6th Cir.1906) (declarant's statement that train was moving fast was improperly admitted as *res gestae* because statement was not shown to have been contemporaneous with event).

81. *White,* 502 U.S. at 356 n. 8, 112 S.Ct. 736.

82. *Bourjaily,* 483 U.S. at 183, 107 S.Ct. 2775.

83. *Vasquez,* 88 N.Y.2d at 575–76, 647 N.Y.S.2d at 703, 670 N.E.2d 1328; *Brown,* 80 N.Y.2d at 734, 594 N.Y.S.2d at 700, 610 N.E.2d 369.

84. Minn.Stat. § 801(d)(1) (2002).

85. Cal. Evid Code § 1241 (2002).

86. *Lilly,* 527 U.S. at 126, 119 S.Ct. 1887 (internal citations omitted).

87. *Roberts,* 448 U.S. at 66, 100 S.Ct. 2531 (internal citation omitted).

ed" for Confrontation Clause purposes. At the very least, against this background, it is for a higher court to conclude otherwise if such a conclusion is to be reached.

### IV. Was the State Court's Application of the Law Reasonable?

The conclusion that the present sense impression exception is "firmly rooted" is sufficient to decide this case. As that conclusion rests on such a debatable foundation, however, interests of judicial economy—specifically, the desirability of avoiding a remand and further prolonging uncertainty as to the status of petitioner's conviction—warrant reaching the other issues in the case against the possibility that a higher court may disagree on the "firmly rooted" point.

▮▮▮ Hearsay evidence that does not fall within a firmly rooted hearsay exception is presumptively unreliable and inadmissible for Confrontation Clause purposes.[88] Its proponent has the burden of demonstrating that it is sufficiently reliable to satisfy the particularized guarantees of trustworthiness test.[89] In assessing whether a hearsay statement has particularized guarantees of trustworthiness, courts look to the "totality of circumstances that surround the making of the statement and that render the declarant particularly worthy of belief."[90] Courts, however, may not "bootstrap," or look to corroborating evidence, to support a hearsay statement's reliability because "[t]o be admissible under the Confrontation Clause, hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its *inherent* trustworthiness, not by reference to other evidence at trial."[91] It stands to reason, however, that courts may not ignore extrinsic evidence tending to show that a statement is unreliable and therefore inadmissible for Confrontation Clause purposes.

Among the factors courts may consider in assessing whether a hearsay statement satisfies the Confrontation Clause are whether the declarant's statement contained an express assertion about past fact, whether the declarant had personal knowledge concerning the substance of his or her statement, whether the statement was founded on faulty recollection, and whether the declarant had a motive to fabricate.[92] The requirement that a declarant have firsthand knowledge of the events he or she describes applies generally to all witnesses,[93] including hearsay declarants,[94] and is a particular element of

88. *Lee v. Illinois,* 476 U.S. 530, 543, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986).

89. *Wright,* 497 U.S. at 816, 110 S.Ct. 3139.

90. *Id.* at 820, 110 S.Ct. 3139.

91. *Id.* at 822, 110 S.Ct. 3139 (emphasis added).
New York's judicially-adopted present sense impression exception, which requires corroboration by extrinsic evidence, is in tension with Supreme Court doctrine. *Vasquez,* 88 N.Y.2d at 575–76, 647 N.Y.S.2d at 703–04, 670 N.E.2d 1328; *Brown,* 80 N.Y.2d at 734, 594 N.Y.S.2d at 700, 610 N.E.2d 369.

92. *Dutton v. Evans,* 400 U.S. 74, 88–89, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970).

93. *See, e.g.,* FED.R.EVID. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *United States v. Stratton,* 779 F.2d 820, 829 (2d Cir.1985) (same).

94. *See, e.g.,* FED.R.EVID. 803(1), 1972 advisory committee's note ("In a hearsay situation, the declarant is, of course, a witness, and neither this rule nor Rule 804 dispenses with the requirement of firsthand knowledge."); *Dutton,* 400 U.S. at 88–89, 91 S.Ct. 210 (upholding, against Confrontation Clause challenge, admission of statement by out-of-court declarant given abundant evidence of declarant's personal knowledge).

the present sense impression hearsay exception.[95] The setting in which a statement was made and its actual content also are pertinent.[96]

Here, the 911 call contained a series of assertions which do not uniformly give rise to the conclusion that they were the products of direct perception. The caller's assertion that there was gunfire appears to satisfy the particularized guarantees of trustworthiness requirement because implicit in the statement is the assertion that the caller saw or, more likely, heard gunfire. It is unnecessary to decide this issue, however, because it was undisputed that gun shots were fired around the time and location identified by the 911 caller.[97]

. The significant question relates to the caller's statement that two light-skinned black men in green coats were shooting at the door of the bar and trying to get in.[98] Determining whether a· statement bears particularized guarantees of trustworthiness involves both circumstantial considerations and· witness competency.[99] For example, in *Barker v. Morris*, in which the petitioner sought habeas relief based on the admission at trial of videotaped testimony of a deceased witness, the court held that there was no Confrontation Clause violation in reliance, in ·part, on the fact that the witness "was not a casual observer but an actual participant who knew all present." [100] Furthermore, the court

---

**95.** 5 WEINSTEIN'S FEDERAL EVIDENCE § 803.03[3] (2d ed. 2002) ("The proponent of the evidence must show that the event or condition about which the statement was made was perceived by the declarant."). *See also United States v. Mitchell*, 145 ˙F.3d 572, 577 (3d Cir.1998) (anonymous note erroneously admitted as present sense impression or excited utterance where record was devoid of circumstances indicating author of note witnessed what note described); *Bemis v. Edwards*, 45 F.3d 1369, 1373 (9th Cir.1995) (911 call properly excluded where "record in this case gives an articulable basis to suspect that [the 911 caller] did not witness the events he described, but instead had relayed to the 911 operator descriptions by other people who had been observing from the windows of [the 911 caller's] house."); *Miller v. Keating*, 754 F.2d 507, 511 (3d Cir.1985) (hearsay testimony of anonymous declarant at accident scene that " 'the bastard cut in' " was admitted erroneously where "[t]he declarant might have been drawing a conclusion on the basis of what he saw as he approached the scene of the accident[,] … he might have been hypothesizing or repeating what someone else had said [or] … it is even possible that the declarant was talking about some other driver who had just cut in front of him.").

**96.** *Wright*, 497 U.S. at 826, 110 S.Ct. 3139; *Lilly*, 527 U.S. at 139, 119 S.Ct. 1887.

**97.** Tr. 299, 301–02, 318, 438–39.

Nor is it necessary to decide whether the·trial court would have been entitled to rely on police accounts of what was taking place on the issue of the 911 call's admissibility. Such reliance arguably would have been problematic in light of the no bootstrapping rule. *See* supra note 91 and accompanying text. .

**98.** People's Ex. 20.

**99.** *Lilly*, 527 U.S. at 136, 119 S.Ct. 1887 (hearsay statements that are "probative, competent, and reliable, yet nonetheless outside of ˙ any firmly rooted hearsay exception" are admissible under the "particularized guarantees of trustworthiness" test).

**100.** 761 F.2d 1396, 1402 (9th Cir.1985). *See ˙ also Anthony v. DeWitt*, 295 F.3d 554 (6th Cir.2002) (hearsay testimony of defendant's co-conspirator did not violate Confrontation Clause because, *inter alia*, declarant had·personal knowledge of facts asserted by virtue of his presence at scene of murder); *United States v. McHan*, 101˙ F.3d 1027, 1038 (4th Cir.1996) (grand jury testimony offered as hearsay satisfied Confrontation Clause where witness participated in offenses with defendant and thus testified from personal knowledge); *Guam v. Carlisle*, No. D.C. CR–92–00012A, S.C. CF193–91, 1993 WL 128229, at *2 (D. Guam App. Div. April 8, 1993) (admission of hearsay statement by robbery victim violated Confrontation Clause because defendant "should have had an opportunity to chal-

looked to the circumstances of the hearsay declarant's statement, including the fact that the witness initiated contact with law enforcement, that his testimony was voluntary, given in open court and under oath and penalty of perjury, and that the jury had the opportunity to observe the declarant's demeanor on the videotape, to find that it satisfied the reliability requirement of the Confrontation Clause.[101]

Here, there is nothing inherent in the statement or in the circumstances in which it was made that suggests with any degree of reliability or certainty that the caller *saw* who was firing weapons as opposed, for example, to inferring from having earlier seen the black men with a gun or guns that they must have been the source of gunshots heard by the caller from inside the bar, the bodega or some other nearby location. Indeed, the evidence strongly suggests, *as respondents conceded in their brief to the Appellate Division*,[102] that the caller did not witness the shooting. The two officers who shot at petitioner testified that petitioner and his companion were facing the officers as they approached from the street and that petitioner's back was to the Phoenix Bar when he fired,[103] whereas the 911 caller described black men in green jackets "trying to shoot at the door of the bar, trying to get in the bar."[104] The officer stationed in a nearby van with a "clear unobstructed view" of the scene also testified that petitioner raised his arm and pointed at the officers as they approached from the street, not that petitioner was facing the bar.[105] Furthermore, the police failed to recover from the scene any shell casings or bullets that matched petitioner's weapon.[106] Finally, the 911 caller failed to mention the presence of the two undercover officers who fired seven rounds at petitioner and his companion, a detail one would expect to have been included in an eyewitness description of the scene.[107] Thus, extrinsic evidence tends to suggest that the 911 caller may not have witnessed the event.

Nor is this a case in which "adversarial testing would add little to [the statement's] reliability."[108] Rather, cross-examination into the declarant's location during the shooting, whether he witnessed the gunfire, and his relationship, if any, with the participants would have provided a basis for assessing the trustworthiness of the caller's statement.

In sum, then, this Court is persuaded that the caller's assertion that the petitioner fired a weapon did not bear particularized guarantees of trustworthiness because there is insufficient basis for concluding that the caller *saw* the shooting.

The fact that this Court disagrees with the Appellate Division's conclusion on this issue of course is not enough to warrant habeas relief. Humility and awareness of human fallibility suggest as much, and the unreasonable application prong of Section 2254(d)(1) has rendered such prudential considerations into positive law that forbids a federal judge from overturning a state court decision merely because the judge disagrees with it. But the Supreme

lenge [declarant's] perception and memory of the events that transpired").

101. *Id.* at 1401–02.

102. Resp. Br. (App.Div.) 27–28.

103. Tr. 301–04, 354, 437–39, 506.

104. People's Ex. 20.

105. Tr. 94–96, 166–70, 185.

106. Tr. 833–34.

107. People's Ex. 20.

108. *Wright*, 497 U.S. at 821, 110 S.Ct. 3139.

Court has made clear that a statement such as this is admissible over hearsay objection, assuming the exception relied upon is not firmly rooted, only if it bears "particularized guarantees of trustworthiness." As indicated, this Court finds little in the statement itself to suggest trustworthiness on the pivotal issue of who was doing the shooting, and substantially all of the other evidence suggests that the 911 caller quite likely did not see who was firing. Bearing in mind that "the increment of incorrectness" necessary to make an application of Supreme Court precedent unreasonable "need not be great," [109] and with the greatest respect to its brethren in the state courts, this Court concludes that the state court's conclusion that the 911 caller's statements that the black men in green jackets were firing bore particularized guarantees of trustworthiness was unreasonable.

### V. Harmless Error Analysis

Assuming *arguendo* that the case turns on whether the critical statements bore particularized guarantees of trustworthiness, the question whether the error perceived by this Court warrants relief would be presented. A court need correct a constitutional error on habeas review only if it "had substantial and injurious effect or influence in determining the jury's verdict." ' [110] Accordingly, a petitioner is entitled to habeas relief only if the trial error resulted in " 'actual prejudice.' ' [111] And whether any error in admitting the 911 tape was harmless is not clear-cut.

 In determining whether the erroneous admission of evidence had a substantial and injurious effect on a jury's decision, the principal factors to be considered are the importance of the wrongly admitted evidence and the overall strength of the prosecution's case. [112] In assessing the importance of the wrongly admitted evidence, a district court should consider such factors as whether it bore on an issue that plainly was critical to the jury's decision, whether it was material to the establishment of a critical fact or instead was corroborated and cumulative, and whether it was emphasized in arguments to the jury. [113] These issues are to be analyzed in light of the record as a whole. [114] Finally, the burden of persuasion is on the government, meaning that if "the matter is so evenly balanced that [the federal judge] feels himself in virtual equipoise as to the harmlessness of the error" the petitioner should prevail. [115]

 Respondents argue that because the firing of a shot is not an element of attempted aggravated assault on a police officer, the one charge on which petitioner was convicted, any error in admitting the 911 tape was harmless. [116] But the argument is not persuasive.

---

**109.** *Francis S.,* 221 F.3d at 111.

**110.** *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

**111.** *Id.* at 637, 113 S.Ct. 1710.

**112.** *Raheem v. Kelly,* 257 F.3d 122, 142 (2d Cir.2001), *cert. denied,* 534 U.S. 1118, 122 S.Ct. 930, 151 L.Ed.2d 892 (2002); *Wray v. Johnson,* 202 F.3d 515, 526 (2d Cir.2000).

**113.** *Id.* (citing *Brecht,* 507 U.S. at 639, 113 S.Ct. 1710, *Chapman v. California,* 386 U.S. 18, 25–26, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and *United States v. Peterson,* 808 F.2d 969, 976 (2d Cir.1987)); *see Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

**114.** *Wray,* 202 F.3d at 526.

**115.** *O'Neal v. McAninch,* 513 U.S. 432, 435, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995).

**116.** Resp. Mem. 31–32.

In order to convict, the jury was obliged to find that petitioner intended seriously to harm the officers.[117] The evidence that he fired at them was sufficient to justify such a finding.[118] And while firing at the officers at least arguably was not necessary to such a finding—as respondents argue, simply pointing his weapon at the officers might have been enough [119]—the 911 call was central to either theory. The only evidence that petitioner even pointed his weapon was the sharply challenged police testimony. Absent the 911 call, the jury might well have rejected the officers' testimony that petitioner pointed his weapon, let alone fired at the police. ·

The importance of the 911 call is confirmed by the prosecutor's emphasis on it in argument to the jury. Although the prosecutor's remarks on summation concerning the tape were fairly brief, comprising approximately two pages of the twenty-nine page summation transcript, her comments were potent. She argued that the 911 call corroborated the other evidence presented at trial:

> "[Y]ou heard a call from an anonymous 911 caller and you heard that person say

two men green, army jackets, light skinned blacks, are firing. Get here now, they're firing. They're trying to get in the bar." [120]

The prosecutor argued also that the 911 caller's account was especially credible because it was based on firsthand, contemporaneous perception:

> "The officers are corroborated by ... an anonymous 911 caller who was reporting the incident *as he saw it unfold before his eyes*, not something that he called about days later or read accounts about in the news or spoke to anyone about. He's telling you what's happening as it is happening." [121]

Although situating these brief remarks in the larger context of the full eleven-day trial may have diminished their import somewhat, it cannot be said that their effect was *de minimis*.[122]

Moreover, the People's overall case—in light of the absence of evidence, physical or otherwise, corroborating the two officers' assertions that petitioner fired a shot—was not strong. The officers' testimony was far from ironclad. They testi-

---

117. N.Y. PENAL LAW §§ 120.00, 120.11 (McKinney 1998).

118. *E.g., People v. Smith*, 162 A.D.2d 736, 557 N.Y.S.2d 424 (2d Dept.1990) (evidence that defendant drew his weapon and fired at detective sufficient to base conviction for attempted aggravated assault on a police officer).

119. Resp. Mem. 31–32 (citing *People v. Brown*, 166 A.D.2d 762, 762, 563 N.Y.S.2d 121, 122 (3d Dept.1990) (affirming defendant's conviction for attempted aggravated assault upon a police officer where defendant pointed gun at officers and pulled trigger several times, but gun's safety apparently prevented it from firing); *People v. Moore*, 165 A.D.2d 884, 885, 560 N.Y.S.2d 352, 353 (2d Dept.1990) (evidence that defendant "rose from a seated position, removed a gun from his waistband and, with his finger on the trigger, pointed the gun at the officer's midsection" was sufficient to support conviction for attempted aggravated assault on a police officer); *People v. Greiner*, 156 A.D.2d 813, 815–16, 549 N.Y.S.2d 831, 833–34 (3d Dept. 1989) (record contained sufficient evidence to support conviction for attempted aggravated assault upon a police officer where defendant struggled with officer, grabbed officer's service revolver, and attempted to fire weapon)). However, none of the cases cited by respondents, nor any other authority for that matter, establishes unequivocally that merely pointing a weapon at an officer is sufficient to satisfy N.Y. PENAL LAW § 120.11.

120. Tr.1938.

121. Tr.1939–40 (emphasis added).

122. The full trial transcript comprises more than 2,000 pages.

fied at trial that only petitioner had fired a shot, whereas the officers asserted in an application for official commendation that both men in green jackets had shot at them.[123] Neither officer could remember whether petitioner had pointed his left or right at them when he fired the weapon.[124] The third officer did not see petitioner or his companion fire at all.[125] These inconsistencies and omissions demonstrate that evidence of petitioner's guilt was far from overwhelming.

In these circumstances, this Court could not conscientiously find that respondents have carried their burden of showing that any error was harmless. Unless the admission of the 911 tape came under a firmly rooted hearsay exception, petitioner would be entitled to a new trial without the evidence of the 911 call.

### Conclusion

The petition for writ of habeas corpus must be denied. The Court grants a certificate of appealability on the questions whether the present sense impression exception to the hearsay rule is "firmly rooted" and, if not, whether the 911 tape had "particularized guarantees of trustworthiness" and whether any error in admitting the 911 tape was harmless.

SO ORDERED.

---

**123.** Tr. 302–03, 438, 640.

**124.** Tr. 357, 508.

**125.** Tr. 167–68, 185, 198–99.