**Troy BROWN, Petitioner–Appellant,**

v.

**John KEANE, Superintendent, Woodbourne Correctional Facility; Eliot Spitzer, Attorney General of the State of New York, Respondents–Appellees,**

Docket No. 02–2703.

United States Court of Appeals, Second Circuit.

Argued: Nov. 13, 2003.

Decided: Jan. 8, 2004.

John Schoeffel, Legal Aid Society, Criminal Appeals Bureau, New York, NY, for Petitioner–Appellant.

Rafael A. Curbelo, Assistant District Attorney (Robert T. Johnson, District Attorney for Bronx County; Joseph N. Ferdenzi and Allen H. Saperstein, Assistant District Attorneys, on the brief), Bronx, NY, for Appellees–Respondents.

Before: WALKER, Chief Judge,
LEVAL and CABRANES, Circuit Judges,

LEVAL, Circuit J.

Petitioner Troy Brown appeals from the judgment of the United States District Court for the Southern District of New York (Kaplan, *J.*) denying his petition for a writ of habeas corpus to overturn his New York State conviction for attempted aggravated assault on a police officer, which resulted in an indeterminate prison term of seven to fourteen years. The petition alleges that Brown's rights under the Confrontation Clause of the United States Constitution were violated by the receipt in evidence at his trial of hearsay consisting of a tape recording of an anonymous 911 emergency telephone call. The anonymous caller's report, which Brown was, of course, unable to cross-examine, was incriminating, as the caller told the police that someone whose description matched Brown was firing a gun. The People contend that the receipt of this hearsay evidence was consistent with the standards of the Confrontation Clause because (i) it consisted of a contemporaneous report of the caller's sensory perceptions and thus came within a firmly rooted exception to the hearsay rule for reports of a present sense impression; and (ii) it carried substantial guarantees of trustworthiness, so that the absence of opportunity for Brown to cross-examine the caller did not significantly impair the reliability of the report. We conclude that this recorded telephone report did not fall within *any* recognized exception to the hearsay rule, much less a firmly rooted exception, and the circumstances in which the statement was made did not furnish any substantial assurance of trustworthiness. The People failed to demonstrate that the caller's incriminating report that Brown was shooting was based on any sensory observation; to the contrary, as Judge Kaplan pointed out, it appears to have been based on conjecture. We conclude that its admission violated Brown's constitutional right to confront his accusers by cross-examination. Because of the prominence given to the tape by the prosecutor in her summation and by the trial judge in the charge, we cannot say its

admission had no substantial effect on the jury's verdict. We therefore remand to the district court for the entry of an order granting the writ.

## Background

The conviction was based on a shooting incident involving Brown and a companion and New York City Housing Police officers, which took place outside the Phoenix Bar in the Bronx in New York City. *Brown v. Keane*, 229 F.Supp.2d 298, 300–01 (S.D.N.Y.2002). The trial evidence showed that the owner of a local bodega, or grocery, placed a call to the police, informing them that two black men wearing green Army jackets and carrying guns had just left his store and entered the Phoenix Bar. Two groups of officers went to the bar and waited outside the front door. When a pair of black men wearing green Army jackets came out, two of the officers, in plain clothes, approached them.

What happened next was disputed. The officers testified at trial that when they approached the men, displayed their shields, and identified themselves as police officers, Brown drew an automatic pistol; the officers saw its muzzle flash, heard its report, and fired back. The defense, however, denied that Brown had fired a shot, or even drawn a gun. The defense contended that the officers had shot at Brown without good cause, and concocted their story of his drawing a gun to avoid punishment and liability. It was undisputed that the officers fired a total of seven shots and wounded Brown, who was then arrested. The jury acquitted Brown of two counts each of first- and second-degree attempted murder, one count of attempted aggravated assault on a police officer, and other lesser charges, but found him guilty of one count of attempted aggravated assault on a police officer.

During trial, the judge admitted into evidence over objection a tape of an anonymous 911 call made at the time of the shooting. The caller said that "[t]wo guys in green coats ... [b]oth light-skinned blacks," who were "right in front" of the Phoenix Bar, were shooting guns "trying to shoot at the door of the bar, trying to get in the bar." [1] The People's argument in support of the admission of the hearsay tape, which the trial court apparently accepted, was that it described events the

---

1. The complete transcript of the 911 call is as follows:

   Operator ("O"): Police Operator 1077, where is your emergency?

   Anonymous Male Caller ("A"): Yeah, 1411 Bronx River Avenue. Guy's got a gun. Two guys in green coats.

   O: Okay, one moment.

   A: It's an emergency, 'cause they shooting.'

   O: Are they in front of the building?

   A: Yeah, right in front.

   O: But they shooting at each other?

   A: Yeah, 1411 Bronx River Avenue. They're trying to get in the bar.

   O: Between 173rd and 174th. Are they Black, White or Hispanics?

   A: Both light-skinned blacks. Both have green coats on.

   O: Wearing green coats. And they're shooting?—

   A: Right at the bar, at the Phoenix.

   O: At the Phoenix Bar?

   A: Yeah, you got to get someone over here quick now.

   O: I've already put this call in, sir. Are they shooting at each other?

   A: No, they're trying to shoot at the door of the bar, trying to get in the bar.

   O: To the Phoenix Bar, right?

   A: Right.

   O: Trying to get in.

   A: Can you hurry, please.

   O: Sir, I've already put the call in, I'm not

   . . .

   A: Alright.

   O: Okay, you want to leave your name and your number?

   A: No, that's alright.

   O: Police'll be there.

   A: Thanks.

caller was witnessing as he was speaking, so that it fell within an exception to the hearsay rule for out-of-court declarations memorializing present sense impressions. *See People v. Brown,* 80 N.Y.2d 729, 734, 594 N.Y.S.2d 696, 610 N.E.2d 369, 373 (1993) (holding that "spontaneous descriptions of events made substantially contemporaneously with the observations are admissible if the descriptions are sufficiently corroborated by other evidence"); *cf.* Fed.R.Evid. 803(1) (analogous federal rule permitting introduction of a "statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter").

The Appellate Division of the New York Supreme Court affirmed Brown's conviction, ruling that the 911 tape was properly admitted because it fell within an exception to the hearsay rule for reports memorializing a present sense impression, and displayed "particularized guarantees of trustworthiness." *People v. Brown,* 284 A.D.2d 156, 726 N.Y.S.2d 252 (App.Div. 2001). The New York Court of Appeals declined to hear Brown's appeal. *People v. Brown,* 96 N.Y.2d 938, 733 N.Y.S.2d 378, 759 N.E.2d 377 (2001). Brown then filed this petition for habeas corpus.

The district court was troubled by Brown's petition. Judge Kaplan was convinced that the 911 caller's assertion that Brown fired a weapon "did not bear particularized guarantees of trustworthiness because there [was] insufficient basis for concluding that the caller *saw* the shooting." *Brown,* 229 F.Supp.2d at 312. In Judge Kaplan's view there was "nothing inherent in the [caller's] statement or in the circumstances in which it was made that suggests with any degree of reliability or certainty that the caller *saw* who was firing weapons as opposed, for example, to inferring from having earlier seen the black men with a

gun or guns that they must have been the source of gunshots heard by the caller from inside the bar, the bodega or some other nearby location." *Id.*

Judge Kaplan noted that the 911 caller's description of the two black men in green coats firing at the door of the bar was incompatible with any other evidence received. The three officers all testified that the defendant was facing in the opposite direction. The caller's failure to mention the plainclothes police officers, who, it is not disputed, were firing at Brown at close range, confirms the likelihood that the caller did not see the scene in the street but rather was in the bar, saw the armed men leave, heard shots in the street, and assumed the same men were the shooters.

Although Judge Kaplan believed the tape was not a trustworthy account of what it reported, he nonetheless denied the petition on the ground that hearsay evidence admitted as a report of a present sense impression categorically satisfies the requirements of the Confrontation Clause because it falls within a "firmly rooted exception" to the hearsay rule. The judge took pains to note that if he was mistaken in his belief that the present sense impression exception is firmly rooted, the writ should be granted because of the inherent unreliability of the tape's incriminating report.

### Discussion

The district court's opinion sets out two analyses. In the first one, the district court engaged in a thoughtful and thorough examination of the present sense impression exception and determined that, in light of its wide acceptance by other state and federal courts as well as legal commentators, the exception was "firmly rooted." On this basis, the district court held that admission of the 911 call was constitutionally permissible, necessitating denial of

the writ. Concerned that this court might disagree that the present sense impression exception is firmly rooted, the district court engaged in a second reasoned analysis to determine whether the 911 call nevertheless demonstrated "particularized guarantees of trustworthiness," as required by the Confrontation Clause. It concluded that the call did not satisfy this requirement. For the reasons explained below, we conclude that because of the very deficiencies identified by the district court in its analysis of the 911 call's reliability, the call not only lacked "particularized guarantees of trustworthiness," as found by the district court, but also did not qualify for the present sense impression exception. Nor have the People proposed any other acceptable justification for its receipt into evidence. Its admission, therefore, was impermissible irrespective of whether the present sense impression exception is "firmly rooted."

1. *The Confrontation Clause and the present sense impression exception:* The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides, "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." The purpose of this so-called Confrontation Clause is to ensure that defendants have the opportunity to subject the prosecution's evidence to cross-examination. *See Maryland v. Craig,* 497 U.S. 836, 845, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). The Confrontation Clause thus protects interests closely aligned with those protected by the rule against hearsay, which excludes out-of-court statements from evidence (when offered to prove the truth of their assertions) unless they fall within certain exceptions developed in the common law and specified in federal and state rules of evidence, which are thought to be justified because state-

ments made under the specified circumstances have a high degree of reliability. *See Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) ("[H]earsay rules and the Confrontation Clause are generally designed to protect similar values and stem from the same roots.") (citations omitted). Accordingly, the Supreme Court has drawn on the law of hearsay in expounding the jurisprudence of the Confrontation Clause.

As a general proposition, in a criminal trial, a statement made out of court (and thus not subject to cross-examination) may be admitted against the accused as evidence of what it asserts only where the state, as the proponent of the presumptively barred evidence, carries its burden of showing that its admission does not violate the defendant's right of confrontation. *See Idaho v. Wright,* 497 U.S. 805, 816, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). This burden may be satisfied in either of two ways, the first categorical, the second particular. First, if the state demonstrates that the hearsay statement falls within a hearsay exception that is "firmly rooted [in] longstanding judicial and legislative experience in assessing the trustworthiness of certain types of out-of-court statements," it is deemed categorically to satisfy the Confrontation Clause. *Id.* at 817, 110 S.Ct. 3139. The Supreme Court has ruled that such traditional hearsay exceptions as those making admissible "dying declarations" and "spontaneous declarations" (also called "excited utterances") are "firmly rooted" in this categorical sense. *See Lilly v. Virginia,* 527 U.S. 116, 126, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (so noting). Alternatively, the state may establish that "particularized guarantees of trustworthiness" derived from the particular circumstances in which the statement was made make the hearsay statement sufficiently reliable for admission, even

though it does not fall within any firmly rooted hearsay exception. *See Roberts,* 448 U.S. at 66, 100 S.Ct. 2531.

Judge Kaplan expressed considerable doubt that the 911 tape satisfied either branch of the test. With respect to whether the hearsay statement was inherently reliable, as noted above, the judge found that in all likelihood the 911 caller did not witness the shooting in the street and that the caller's assertion that the light-skinned black men were shooting therefore "did not bear particularized guarantees of trustworthiness."

Judge Kaplan also expressed doubt as to whether the exception for present sense impressions is firmly rooted. He noted that the rationale for the exemption of reports of present sense impressions from the bar of the hearsay rule is less persuasive than in the case of other hearsay exceptions that have been found to be firmly rooted, such as dying declarations and excited utterances. Judge Kaplan noted that the *Wigmore* evidence treatise had rejected an exception for reports of present sense impressions because "mere contemporaneity of event and declaration, without the shock of a startling or stressful event," does not sufficiently guarantee trustworthiness. *Brown,* 229 F.Supp.2d at 308 (citing 6 Wigmore, Evidence § 1757, at 238 (Chadbourn rev.1976)).

Nonetheless, because of the adoption of the present sense impression exception in the Federal Rules of Evidence and by a large number of states, and giving deference to what Judge Kaplan understood to be a statement of our court endorsing the notion that this exception was firmly rooted, *see United States v. Jones,* 299 F.3d 103, 113–14 (2d Cir.2002), Judge Kaplan concluded "not without hesitation, that the present sense [impression] exception is 'firmly rooted' for Confrontation Clause purposes" and that Brown's petition there-fore must fail. *Brown,* 229 F.Supp.2d at 309–10.

We need not reach the question whether the hearsay exception for reports of a present sense impression is firmly rooted, so as to satisfy the requirements of the Confrontation Clause. In our view, that question has no application to this petition because the 911 tape—at least the portion in which the caller states that Brown fired shots—did not come within the terms of the present sense impression exception. This is so for the very reasons Judge Kaplan cited in his explanation why the tape lacked guarantees of trustworthiness.

■ In offering this presumptively barred hearsay evidence, the People had the burden of showing that it came within a sanctioned exception to the hearsay rule, or was otherwise compatible with the Confrontation Clause because of its inherent reliability. The People argued at trial that the tape should be received because it constituted the declarant's contemporaneous "account of what he is observing outside [the Phoenix Bar] ... what he is seeing unfold before his eyes." "[W]e have an anonymous male caller who is reporting events that are substantially simultaneous to his witnessing them." According to the People's argument, what brought the tape within the scope of the present sense impression exception, and made it inherently reliable, was that the caller saw Brown fire and immediately reported that fact in the 911 call.

As Judge Kaplan persuasively demonstrated, however, far from supporting the inference that the caller saw who was firing the weapons, the contents of the tape, taken in the light of the other evidence, "strongly suggest[ ] ... that the caller did not witness the shooting," but rather heard the shots and, having recently seen the armed men leave the bar, assumed they

were the ones doing the shooting. *Brown,* 229 F.Supp.2d at 312. Judge Kaplan explained that no other evidence in the case was compatible with the caller's report that the two light-skinned black men were shooting at the bar. Furthermore given that the plainclothes police officers were shooting at Brown at close range, it is virtually inconceivable that the caller, had he been viewing the scene, would have failed to see and mention them. Judge Kaplan concluded there was no sufficient basis for finding that the caller saw the shooting that was taking place in the street.

Judge Kaplan made these observations to support his conclusion that the tape did not bear particularized guarantees of trustworthiness. We agree with that conclusion. The further point follows, however, that if the caller did not see Brown shooting, his statement to that effect was not a report of his contemporaneous *observation,* but rather of his *surmise.* Given the irreconcilable differences between the events that indisputably occurred in the street and the caller's very different description, it is most unlikely that the caller saw what was happening in the street. In essence, there was no reasonable basis for believing that the caller saw the light-skinned black men firing guns.

██ The present sense impression exception applies only to reports of what the declarant has actually observed through the senses, not to what the declarant merely conjectures. *See Schering Corp. v. Pfizer Inc.,* 189 F.3d 218, 233 (2d Cir. 1999) ("Statements based on present sense impressions ... express knowledge based on direct sensory perception."); *Brown,* 80 N.Y.2d at 732, 594 N.Y.S.2d 696, 610 N.E.2d at 371 ("[T]he present sense impression exception permits a court to admit hearsay testimony of a statement describing or explaining an event or condition *made while the declarant was perceiving the event or condition,* or immediately thereafter.") (emphasis added); 5 Weinstein's Federal Evidence § 803.03[3] (2d ed. 2000) ("The proponent of the evidence must show that the event or condition about which the statement was made was perceived by the declarant.").

We conclude that the 911 tape, or at least the portion in which the caller states that the light-skinned black men in front of the bar are shooting—the crucial issue in Brown's trial—was not shown by the People to be a report of a present sense impression and thus did not fall within the exception for that class of hearsay. We therefore have no reason to consider whether the hearsay exception for reports of present sense impressions is firmly rooted.[2]

██ 2. *The excited utterance exception:* The People suggested at oral argument that, as in *Jones,* the qualification of the hearsay under the doctrine of the present sense impression is unnecessary because the 911 tape was also admissible under the *excited utterance* exception to the hearsay rule, which has been ruled to be firmly rooted. *See Lilly,* 527 U.S. at

---

**2.** In *Jones,* 299 F.3d at 113–14, we did not intend to indicate any view as to whether the exception for present sense impressions was firmly rooted. In that case, the government sought to justify the receipt of the hearsay on the basis of either the excited utterance exception or the present sense impression exception, or both. It was our intention to rule that because the firm-rootedness of the excited utterance exception was clearly established, we had no need to reach the question of the firm-rootedness of the present sense impression exception. The *Jones* panel has requested that we make clear in this opinion that *Jones* did not adjudicate whether the exception for present sense impressions is firmly rooted. That question remains undecided in our circuit.

126, 119 S.Ct. 1887. The argument is based on a misunderstanding of the requirements of the excited utterance exception. This doctrine permits the use in a manner otherwise forbidden by the hearsay rule of statements made "in a moment of excitement—without the opportunity to reflect on the consequences of one's exclamation." *White v. Illinois*, 502 U.S. 346, 356, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992). Such assertions of fact are thought to be reliable because the declarant, in a state of excitement, is unlikely to muster the reflection necessary for fabrication. *See Brown*, 80 N.Y.2d at 736, 594 N.Y.S.2d 696, 610 N.E.2d at 374. To be competent as evidence, however, the declarant's factual assertion must rest on personal knowledge. In *Jones*, for example, the witness's excited out-of-court report was of events the witness was observing. 299 F.3d at 107. Mere excitement, however, not coupled with knowledge of the event described, adds nothing to reliability. When a declarant, alarmed by the *sound* of gunshots, speculates in a state of excitement as to the identity of a shooter she does not see, that speculation is not reliable.

■ It is one of the most basic requirements of the law of evidence that a witness's report may be admitted only where grounds exist for "a finding that the witness has personal knowledge of the matter" to which the statement relates. *See* Fed.R.Evid. 602. Ordinarily, such a witness's account may be received only when given in open court, under oath, and subject to cross-examination. When the witness's declaration was made out of court in excited circumstances, the excited utterance exception to the hearsay rule permits the receipt of the out-of-court statement, not under oath, and without opportunity for cross-examination. But the exception does not obviate the requirement that the declarant have personal knowledge of the subject of his report. *See* Fed.R.Evid. 803 advisory committee's note ¶ 3 (noting that hearsay exceptions identified in rule are subject to Fed.R.Evid. 602 requirement of firsthand knowledge). An assertion of fact based on conjecture and surmise, to which the declarant would not be allowed to testify if called to the witness box, does not become admissible under an exception to the hearsay rule merely because it was uttered out of court in a state of excitement. Where the People failed to show that the caller saw who was firing the shots outside the Phoenix Bar, the caller's excitement cannot justify the receipt of his statement based on surmise that light-skinned black men wearing green coats were doing the shooting.[3] A statement expressing conjecture on a question as to which the declarant lacks personal knowledge simply cannot bear "particularized guarantees" of reliability sufficient to overcome the Sixth Amendment presumption of inadmissibility of hearsay statements.

3. *Standard for grant of habeas corpus under AEDPA:* A writ of habeas corpus may be granted on behalf of a prisoner held pursuant to the judgment of a state court when the state court's judgment "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as deter-

**3.** Our analysis might well be different if portions of the tape were offered to show that, at the exact time of the call, there were gunshots in the street outside the bar. Such an offer might well have been justified by either of the two exceptions because the circumstances strongly suggest that the caller heard the noise of shots being fired in the street when he made the call and made his report in a state of excitement. Such an offer, however, would have been of little or no value to the trial. It was undisputed that shots were fired in the street. The crucial question was whether Brown (or his companion) had fired any of them.

mined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Petitioner contends that his conviction resulted from an unreasonable application of the Confrontation Clause. The district judge agreed that the hearsay carried no guarantees of trustworthiness, although believing this was mooted by reason of the firm-rootedness of the present sense impression exception.

■ We agree with the petitioner's contention. The ruling of the Appellate Division that the 911 tape bore particularized guarantees of trustworthiness, so that it satisfied the requirements of the Confrontation Clause, was an unreasonable application of federal law within the meaning of 28 U.S.C. § 2254(d)(1). There was no reasonable basis in the evidence to find that the caller saw the defendant shooting. Accordingly, there was no reasonable basis to conclude that the hearsay report either fell under a firmly rooted exception or carried particularized guarantees of trustworthiness. The district court noted that the People had conceded in their brief to the Appellate Division the likelihood that the 911 caller did not observe the shooting scene in the street. The People conceded again in the oral argument before us that the most likely inference from the tape was that the caller had earlier seen Brown and his companion with guns and, upon hearing the shots shortly thereafter, assumed they were the shooters. The receipt of this hearsay asserting a highly incriminating fact based on the declarant's surmise was incompatible with the Sixth Amendment right of confrontation as it has been expounded by the Supreme Court.

■ 4. *Harmless error?* One question remains. A habeas petitioner is entitled to relief only if the constitutional error at trial was not harmless. The Supreme Court has set forth two different tests for

determining whether an error may be overlooked by reason of its harmlessness. In *Brecht v. Abrahamson* the Court held that on collateral review of a state conviction, an error is harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (internal quotation marks omitted). In *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Court held that on direct review of a criminal conviction, an error may be overlooked only if it is "harmless beyond a reasonable doubt." As this court has observed several times, it is an open question in this circuit whether, following the passage of AEDPA, the applicable test on habeas review of a state conviction remains the one set forth in *Brecht*, or instead should be a determination "whether the state court's decision was 'contrary to, or involved an unreasonable application of' *Chapman*." *Noble v. Kelly*, 246 F.3d 93, 101 n. 5 (2d Cir.), *cert. denied*, 534 U.S. 886, 122 S.Ct. 197, 151 L.Ed.2d 139 (2001). *See, e.g., Parsad v. Greiner*, 337 F.3d 175, 185 n. 5 (2d Cir.), *cert. denied*, —— U.S. ——, 124 S.Ct. 962, 157 L.Ed.2d 798 (2003); *Cotto v. Herbert*, 331 F.3d 217, 253–54 (2d Cir.2003); *Ryan v. Miller*, 303 F.3d 231, 253–54 (2d Cir. 2002) (collecting cases); *Fuller v. Gorczyk*, 273 F.3d 212, 220–21 (2d Cir.2001); *Loliscio v. Goord*, 263 F.3d 178, 185 n. 1 (2d Cir.2001); *Santana–Madera v. United States*, 260 F.3d 133, 140 (2d Cir.2001), *cert. denied*, 534 U.S. 1083, 122 S.Ct. 817, 151 L.Ed.2d 701 (2002); *Noble*, 246 F.3d at 101 n. 5. In each of these cases, we declined to decide the question because we concluded that the result was the same under either test. For the same reason, we have no need to resolve the question in this case.

In making a determination of harmless error, the court looks to the record as a whole, considering the overall strength of the prosecution's case, the importance of the improperly admitted evidence, and whether the evidence was emphasized at trial. *See Raheem v. Kelly,* 257 F.3d 122, 142 (2d Cir.2001), *cert. denied,* 534 U.S. 1118, 122 S.Ct. 930, 151 L.Ed.2d 892 (2002); *Wray v. Johnson,* 202 F.3d 515, 526 (2d Cir.2000). The district court believed the admission of the 911 tape was not harmless. We agree.

The prosecutor explicitly argued to the jury in her summation that the 911 tape corroborated the officers' testimony that Brown had fired his gun, asserting to the jury that the caller "was reporting the incident as he saw it unfold before his eyes." Furthermore, the trial judge's charge to the jury expressly called attention to the tape, instructing the jury to "listen to and consider this tape recording exactly as you would listen to a witness on the witness stand." Finally, the defense advanced substantial arguments to the jury as to the possible motivation of prosecution witnesses to fabricate the claim that Brown fired a gun. The 911 tape was the only disinterested evidence on that crucial issue. The district court concluded that the prosecution case was "far from ironclad." In light of the importance of the tape to the prosecution's overall case and the manner in which the prosecutor stressed the tape at trial, we cannot find that its admission was harmless error. We agree with the district court that it "had substantial and injurious effect or influence" on the verdict. *Brecht,* 507 U.S. at 638, 113 S.Ct. 1710. We also conclude that admission of the tape could not reasonably be found to be "harmless beyond a reasonable doubt." *Chapman,* 386 U.S. at 24, 87 S.Ct. 824.

Because admission of the 911 tape violated petitioner's right of confrontation under the Sixth Amendment and was not harmless, we vacate the judgment of the district court and remand with directions to grant a writ of habeas corpus ordering the petitioner's release unless a new trial is granted.

### Conclusion

The judgment of the district court is VACATED and the case REMANDED with directions to issue a writ of habeas corpus.