**Pedro GUTIERREZ Petitioner–Appellant,**

v.

**Michael McGINNIS, Superintendent, Attica Correctional Facility, Respondent–Appellee.**

**Docket No. 03–2560.**

United States Court of Appeals, Second Circuit.

Argued: July 16, 2004.

Decided: Nov. 15, 2004.

Robert J. Boyle, New York, NY, for petitioner-appellant.

Yael V. Levy, Assistant District Attorney for Bronx County, New York (Robert T. Johnson, District Attorney, Joseph N. Ferdenzi, Assistant District Attorney, on the brief), Bronx, NY, for respondent-appellee.

Before: CALABRESI, SOTOMAYOR, Circuit Judges, and COTE, District Judge.*

SOTOMAYOR, Circuit Judge.

Petitioner-appellant Pedro Gutierrez appeals from a denial of a petition for a writ of habeas corpus under 28 U.S.C. § 2254, entered on July 31, 2003, in the United States District Court for the Southern District of New York (Baer, J.). Petitioner contends that the New York state trial court admitted into evidence the recording of an anonymous 911 call in contravention of the Sixth Amendment's Confrontation Clause. On direct appeal, the Appellate Division ruled that the trial court had properly admitted the evidence and that, even if the court had erroneously admitted the tape, such error was harmless in light of overwhelming evidence of petitioner's guilt. *People v. Gutierrez*, 248 A.D.2d 295, 295, 670 N.Y.S.2d 85 (1st Dep't 1998), *leave to appeal denied*, 92 N.Y.2d 925, 680 N.Y.S.2d 467, 703 N.E.2d 279 (1998) (Bellacosa, J.) (upon reconsideration). On collateral review, Judge Harold Baer, Jr. denied the writ on the grounds that the evidence had properly been admitted, but noted that had such admission been erroneous, the error would not have been harmless. *Gutierrez v. McGinnis*, No. 00 Civ. 395, 2003 WL 21782628, at *5

---

* The Honorable Denise Cote, United States District Judge for the Southern District of New York, sitting by designation.

(S.D.N.Y. July 31, 2003). We hold that when a state appellate court explicitly engages in harmless error review, a habeas court must assess whether the state court unreasonably applied Supreme Court precedent governing direct review of constitutional error. Because the Appellate Division reasonably applied that precedent in this case, we affirm the denial of the writ of habeas corpus.

## BACKGROUND

A jury in the Supreme Court of New York, Bronx County, convicted Gutierrez of assorted crimes arising from a fatal shooting incident among rival drug dealers. The prosecution's central theory was that the episode involved three shooters rather than two. The ballistics evidence recovered from the scene of the crime only corroborated the existence of two guns. Three witnesses testifying pursuant to federal cooperation agreements, two of whom testified to being the two other perpetrators in the shooting incident, provided eyewitness testimony directly identifying petitioner as a third shooter. The testimony of several non-cooperating witnesses was more equivocal. Over defense objection, the court admitted into evidence a 911 call from an anonymous driver, made within three minutes of the incident, under New York's present sense impression exception to the rule against hearsay. The caller repeatedly described three young men as shooters. During summation, the prosecution highlighted the call as "one of the most important pieces of evidence."

The Appellate Division, First Department, held that the call was sufficiently contemporaneous with the described event to qualify for admission under New York's present sense impression exception, and "any error in admission of this evidence was harmless in view of the overwhelming evidence of defendant's guilt." *Gutierrez*, 248 A.D.2d at 295, 670 N.Y.S.2d 85. On habeas review, Judge Baer held that the tape's admission satisfied the federal Confrontation Clause as a "firmly rooted exception" to the hearsay rule, and denied the writ. *Gutierrez*, 2003 WL 21782628, at *4. Concerned that an appellate court would disagree, and that the 911 call otherwise lacked inherent indicia of reliability, Judge Baer granted a certificate of appealability on the admissibility of the 911 call. *Id.* at *7. In light of this concern, Judge Baer noted that if the disputed evidence *had* been erroneously admitted, the error would not have been harmless. *Id.* at *4–*5.

## DISCUSSION

We review the denial of a writ of habeas corpus *de novo*. *Francolino v. Kuhlman*, 365 F.3d 137, 140 (2d Cir.2004). We need not reach petitioner's complex claim that the 911 call's admission into evidence violated the Confrontation Clause.[1] Rather,

---

1. On appeal to this Court, petitioner argues that the Supreme Court's recent decision of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), should be deemed retroactively applicable to cases on collateral review under the exception in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) for "watershed rules of criminal procedure," 489 U.S. at 311–12, 109 S.Ct. 1060, and that under *Crawford*, the anonymous 911 call qualified as per se inadmissible "testimonial" evidence. Petitioner further argues that *Crawford* did not remove non-testimonial hearsay from Confrontation Clause scrutiny under *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) and *White v. Illinois*, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992), and that if *Crawford* was non-retroactive or the 911 call non-testimonial, the call fails Confrontation Clause scrutiny under the *Roberts* test either because the present sense impression exception is not a firmly rooted hearsay exception or because this particular hearsay did not bear particularized guarantees of trustworthi-

we examine whether the purported error was harmless. We take this opportunity to settle the question of whether the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996), in amending the relevant federal habeas statute, 28 U.S.C. § 2254, has altered the inquiry into harmless error on collateral review.

▆▆▆ The standard for harmless error on direct review is the familiar test established by *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The *Chapman* Court held "that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. 824. The Court equated this standard to the way it framed the inquiry in a prior case, as " 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' " *Id.* (quoting *Fahy v. State of Connecticut*, 375 U.S. 85, 86–87, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963)); *see United States v. Dominguez Benitez*, —— U.S. ——, 124 S.Ct. 2333, 2339 n. 7, 159 L.Ed.2d 157 (2004) (noting that to excuse an error under the *Chapman* standard, "it is not enough to negate an effect on the outcome of the case"); *Schneble v. Florida*, 405 U.S. 427, 432, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972) (interpreting *Chapman* in concluding "that the 'minds of an average

jury' would not have found the State's case significantly less persuasive had the [disputed testimony] been excluded. The admission into evidence of these statements, therefore, was at most harmless error"). The burden of proving the error's harmlessness falls "to someone other than the person prejudiced by it." *Id.; Brecht v. Abramson*, 507 U.S. 619, 630, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *see Dominguez Benitez*, 124 S.Ct. at 2339 n.7 (noting *Chapman* standard as an example of when the government bears the burden of addressing prejudice).

A few years prior to AEDPA's enactment, the Supreme Court held that *Chapman* did not apply to cases on collateral review. *Brecht*, 507 U.S. at 623, 113 S.Ct. 1710. Rather, the state's interest in finality, the presumption of a conviction's legality, the competence of state fora to enforce federal rights, and the interests of federalism, *id.* at 633–37, 113 S.Ct. 1710, all counseled in favor of a standard "less onerous" on the state. *Id.* at 637, 113 S.Ct. 1710. Instead, the Court adopted the standard enunciated in *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946): "[W]hether the error 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Id.* (quoting *Kotteakos*, 328 U.S. at 776, 66 S.Ct. 1239). This standard was "better tailored to the nature and purpose of collateral review." *Id.* at 638, 113 S.Ct. 1710.[2]

---

ness. Because we affirm on harmless error grounds, we express no opinion on these claims, and further note that the question of whether the present sense impression is a "firmly rooted" hearsay exception remains open.

**2.** The *Kotteakos* standard is articulated as follows:

If, when all is said and done, the [court's] conviction is sure that the error did not influence the jury, or had but very slight

effect, the verdict and the judgement should stand .... But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial in-

■ AEDPA amended 28 U.S.C. § 2254, in pertinent part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States . . .

AEDPA § 104, 110 Stat. 1219, *codified at* 28 U.S.C. § 2254(d)(1). Thus, federal courts sitting in habeas review of state convictions must grant a measure of deference to claims "adjudicated on the merits" by state courts. *See Sellan v. Kuhlman,* 261 F.3d 303, 310–11 (2d Cir.2001). For purposes of AEDPA deference in our Circuit, a state court "adjudicates" a state prisoner's federal claim on the merits when it "(1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment. . . . even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Id.* at 312.

While AEDPA's amendments to 28 U.S.C. § 2254 do not expressly overrule the *Brecht* standard for harmless error on collateral review, as noted, the amended statute now requires habeas courts to evaluate state adjudications of federal claims with some deference. *Chapman* binds a state appellate court—directly reviewing a

lower state court—to dispose of federal constitutional errors as harmless only if the error was harmless beyond a reasonable doubt. *E.g. People v. Crimmins,* 36 N.Y.2d 230, 240–42, 367 N.Y.S.2d 213, 326 N.E.2d 787 (1975) (interpreting *Chapman* for New York courts); *see Sellan,* 261 F.3d at 314 (citing *Testa v. Katt,* 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947)) ("Under the Supremacy Clause, state courts are obligated to apply and adjudicate federal claims fairly presented to them."). When a state court holds that a particular federal constitutional error at trial is harmless, that holding is an adjudication of a federal claim, in turn suggesting that AEDPA's deferential standards must attach. Thus AEDPA may not overrule *Brecht* directly, but the statute's implications do call *Brecht*'s continuing viability into question. Accordingly, this Circuit has frequently questioned "whether, following the passage of AEDPA, the applicable test [for harmless error] on habeas review of a state conviction remains the one set forth in *Brecht,* or instead should be a determination 'whether the state court's decision was 'contrary to, or involved an unreasonable application of' *Chapman.*'" *Brown v. Keane,* 355 F.3d 82, 91 (2d Cir.2004) (quoting *Noble v. Kelly,* 246 F.3d 93, 101 n. 5 (2d Cir.2001) (quoting 28 U.S.C. § 2254(d)(1))); *see, e.g., Parsad v. Greiner,* 337 F.3d 175, 185 n. 5 (2d Cir.2003); *Cotto v. Herbert,* 331 F.3d 217, 253–54 (2d Cir. 2003); *Ryan v. Miller,* 303 F.3d 231, 253–54 (2d Cir.2002); *Fuller v. Gorczyk,* 273 F.3d 212, 220–21 (2d Cir.2001); *Loliscio v. Goord,* 263 F.3d 178, 185 n. 1 (2d Cir.2001); *Noble,* 246 F.3d at 101 n. 5.[3] Our question-

---

fluence. If so, or if one is left in grave doubt, the conviction cannot stand.
*Kotteakos,* 328 U.S. at 764–65, 66 S.Ct. 1239; *see O'Neal v. McAninch,* 513 U.S. 432, 437–38, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995).

**3.** The circuits have divided on this question. In resolving the issue, some circuits take a

two-step approach, evaluating whether the state court unreasonably applied *Chapman,* then further assessing the underlying error under *Brecht.* *Allen v. Lee,* 366 F.3d 319, 336–37, 342–44 (4th Cir.2004) (en banc) (plurality) (two concurrences applying two-step approach); *Aleman v. Sternes,* 320 F.3d 687,

ing of *Brecht*'s continuing vitality has not hinged on whether the state appellate court actually engaged in explicit harmless error review in the first instance.[4] *Compare, e.g., Noble,* 246 F.3d at 101 n. 5 (noting open question where state appellate court explicitly reviewed error for harmlessness), *and Fuller,* 273 F.3d at 220–21 (same), *with Cotto,* 331 F.3d at 253–54 (noting open question where state appellate court did not conduct harmless error review), *and Ryan,* 303 F.3d at 253–54 (same). *See also Brown,* 355 F.3d at 91 (citing precedent involving explicit harmless error review by state appellate courts even though relevant state court did not conduct such analysis in the instant case).

■ Generally, we decline to resolve an open question until a case presents facts where the outcome differs depending on that question's resolution. *See, e.g., Noble,* 246 F.3d at 101 n. 5. The question of which standard to apply on collateral review has thus far remained unanswered. The outcomes of the relevant cases presented to us have not turned upon the choice between the two methods of harmless error inquiry—*Brecht*'s requirement that the error substantially and injuriously affected the verdict, versus attaching AEDPA deference to a state appellate court's application of *Chapman. E.g. id.; Brown,* 355 F.3d at 91.

Indeed, this persistent similarity in outcomes is quite logical. On direct review, *Chapman* is considerably more generous to prejudiced defendants than is *Brecht. Chapman,* after all, requires a reviewing court to be convinced beyond a reasonable doubt that the error was harmless, while *Brecht* requires a reviewing court to identify a substantial and injurious effect on the verdict.[5] Consider, for example, a constitutional error grave enough to satisfy *Brecht*'s rigorous standard for granting habeas relief. If a reviewing state court had classified that same error as harmless under *Chapman,* it is unlikely that the state court applied *Chapman* reasonably.[6] *See*

690–91 (7th Cir.2003) (endorsing two stage inquiry, but not requiring habeas judges to follow particular sequence in applying standards). The Ninth Circuit initially adopted this approach in *Medina v. Hornung,* 372 F.3d 1120, 1125–27 (9th Cir.2004), but later superseded the relevant analysis by an amended opinion that did not address the issue. *See Medina v. Hornung,* 386 F.3d 872 (9th Cir. 2004).

Other Circuits have held *Brecht* to be the sole standard required. *See, e.g., Nevers v. Killinger,* 169 F.3d 352, 371 (6th Cir.1999) (holding *Brecht* alone supplied appropriate standard, as *Brecht* standard "precisely captures" congressional intent as expressed in AEDPA, and because by satisfying *Brecht* a petitioner simultaneously satisfies the unreasonable application of *Chapman* standard) *abrogated on other grounds by Harris v. Stovall,* 212 F.3d 940 (6th Cir.2000); *cf. Robertson v. Cain,* 324 F.3d 297, 306–07 (5th Cir.2003); *Herrera v. Lemaster,* 301 F.3d 1192, 1200 (10th Cir.2002) (en banc); *Sanna v. Dipaolo,* 265 F.3d 1, 14 (1st Cir.2001). *See also Allen,*

366 F.3d at 354 (Williams, J., dissenting) (arguing application of *Brecht* alone).

The Eighth Circuit, in contrast, expressed doubt as to whether *Brecht* survived AEDPA at all. *Whitmore v. Kemna,* 213 F.3d 431, 433 (8th Cir.2000); *see also Brown v. Luebbers,* 371 F.3d 458, 469 (8th Cir.2004) (en banc) (denying habeas relief where state's harmless error analysis was not an unreasonable application of *Chapman*).

4. Several of our fellow circuits have resolved the issue, albeit with different approaches as discussed in note 3, *supra,* in cases where the state appellate court conducted explicit harmless error review. *E.g. Aleman,* 320 F.3d at 690–91; *Nevers,* 169 F.3d at 371–72.

5. We need not and do not speculate as to what factual scenarios might yield different outcomes under the two approaches.

6. This logical overlap in outcomes under the two methods of inquiry into harmless error apparently motivated some Circuits to resolve the question by suggesting that *Brecht* "pre-

*Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000) (observing that § 2254(d)(1)'s "unreasonable application" clause requires an "increment of incorrectness beyond error" by a state court applying clearly established federal law, but cautioning that "the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence").

In its recent decision of *Mitchell v. Esparza,* 540 U.S. 12, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003) (per curiam), however, the Supreme Court implicitly rejected *Brecht* as the proper lens for examining the harmlessness of constitutional errors on collateral review, at least where the state explicitly adjudicated a federal claim on harmless error grounds. In *Mitchell,* the Sixth Circuit had affirmed a district court's grant of habeas relief to a state prisoner after concluding that the Ohio Court of Appeals had incorrectly applied a harmless error analysis to a capital defendant's claims that he had been improperly convicted under Ohio's aggravated murder statute. *See Esparza v. Mitchell,* 310 F.3d 414, 421–22 (6th Cir.2002) *rev'd* 540 U.S. 12, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003). The Supreme Court reversed, as the Ohio Court of Appeals' decision to apply harmless error review was not "contrary to . . . clearly established federal law." *Mitchell,* 124 S.Ct. at 10–11.

The *Mitchell* Court then held that the Ohio Court of Appeals' application of harmless error analysis merited deference under § 2254(d)(1) as it was not "an unreasonable *application* of clearly established Federal law." *Id.* at 12, 124 S.Ct. 7 (alteration in original). In this context, the Court defined the harmless error standard under review as the *Chapman* standard requiring the state court to find "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *See id.* (internal quotations omitted). The Court held that a habeas court "may not grant respondent's habeas petition . . . if the state court simply erred in concluding that the State's errors were harmless; rather, habeas relief is appropriate only if the Ohio Court of Appeals applied harmless-error review in an 'objectively unreasonable' manner." *Id.* (quoting *Lockyer v. Andrade,* 538 U.S. 63, 75–77, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). The Court then held that the Ohio Court of Appeals' conclusion "was hardly objectively unreasonable." *Id.*

■ *Mitchell* signals, and we therefore hold, that when a state court explicitly conducts harmless error review of a constitutional error, a habeas court must evaluate whether the state unreasonably applied *Chapman.* We do not presently reach the issue of whether or how to apply *Brecht* where the state court has not engaged in harmless error review, as, of course, those facts are not before us.[7] Nor does extend-

---

cisely captures" the congressional intent expressed in AEDPA, and thus *Brecht* survived AEDPA's enactment. *See Nevers v. Killinger,* 169 F.3d 352, 371–72 (6th Cir.1999), *abrogated on other grounds by Harris v. Stovall,* 212 F.3d 940 (6th Cir.2000). These circuits have concluded that a petitioner sufficiently prejudiced by a trial error to secure habeas relief under *Brecht* simultaneously survives the inquiry into whether a reviewing state court reasonably applied *Chapman. Id.; cf. Robertson v. Cain,* 324 F.3d 297, 306 (5th Cir.2003); *Herrera v. Lemaster,* 301 F.3d

1192, 1200 (10th Cir.2002) (en banc); *Sanna v. Dipaolo,* 265 F.3d 1, 14 n. 6 (1st Cir.2001).

7. We note that while *Mitchell* did not cite *Brecht,* the Supreme Court has favorably cited *Brecht* since AEDPA's passage. For example, in *Penry v. Johnson,* 532 U.S. 782, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001), the Court applied *Brecht* on collateral review of a state decision post-AEDPA to hold that even if prosecutorial error clearly violated the Fifth Amendment, the error would not have violated *Brecht'*s test of a "substantial and injurious effect or influ-

ing the analytical framework of AEDPA to this matter blindfold habeas courts to constitutional error infecting state trials; what we have frequently labeled AEDPA deference is by no means blind obedience.

Here, the district court denied the writ on the grounds that the admission of the 911 call was not error at all under the Confrontation Clause, an issue we need not reach. *Gutierrez*, 2003 WL 21782628, at *4. Concerned that the issue was close enough that an appellate court might disagree with this conclusion, Judge Baer held in the alternative that if the call's admission was ultimately held erroneous, that error was not harmless. *Id.* at *5. Judge Baer referred neither to *Brecht* nor to the reasonableness of the Appellate Division's ruling in light of *Chapman*. *Id.*

The Appellate Division held that "any error in admission of this evidence was harmless in view of the overwhelming evidence of defendant's guilt." *Gutierrez*, 248 A.D.2d at 295, 670 N.Y.S.2d 85 (citing *People v. Johnson*, 213 A.D.2d 241, 624 N.Y.S.2d 123 (1st Dep't 1995)). Under New York law, harmless error standards for both federal constitutional errors and non-constitutional errors are only implicated when there is already "overwhelming" evidence of a defendant's guilt. *Crimmins*, 36 N.Y.2d at 240–42, 367 N.Y.S.2d 213, 326 N.E.2d 787. In the 1975 decision of *People v. Crimmins*, 36 N.Y.2d 230, 367 N.Y.S.2d 213, 326 N.E.2d 787 (1975), the New York Court of Appeals interpreted *Chapman* when it explained the distinction between the federal harmless error rule with respect to constitutional error, and New York's harmless error rule with respect to non-constitutional error. 36 N.Y.2d at 240–42, 367 N.Y.S.2d 213, 326

N.E.2d 787. Both tests require "overwhelming" proof or evidence of the defendant's guilt absent the error before applying harmless error review. *See id.* at 241, 367 N.Y.S.2d 213, 326 N.E.2d 787 ("[I]n either instance ... unless the proof of the defendant's guilt, without reference to the error, is overwhelming, there is no occasion for the consideration of any doctrine of harmless error."); *cf. id.* at 242, 367 N.Y.S.2d 213, 326 N.E.2d 787 ("If, however, an appellate court has satisfied itself that there was overwhelming proof of the defendant's guilt, its [harmless error] inquiry does not end there. Under our system of justice a jury is not commanded to return a verdict of guilty even in the face of apparently conclusive proof of the defendant's guilt.").

The *Crimmins* court discerned "two discrete considerations" to be relevant in harmless error analysis generally. *Id.* at 240, 367 N.Y.S.2d 213, 326 N.E.2d 787. "The first of such factors is the quantum and nature of proof of the defendant's guilt if the error in question were to be wholly excised. The second is the causal effect which it is judged that the particular error may nonetheless have had on the actual verdict." *Id.* With respect to harmless error review for federal constitutional errors, the court noted that the federal test focused on the second consideration, and describing the federal test to be "perhaps the most demanding test yet formulated." *Id.* at 240–41, 367 N.Y.S.2d 213, 326 N.E.2d 787. "Thus, however overwhelming may be the quantum and nature of other proof, the error is not harmless under the Federal test if 'there is a reasonable possibility that the ... [error] might have contributed to the conviction.'" *Id.*

ence in determining the jury's verdict." 523 U.S. at 795–96, 118 S.Ct. 1726. *Penry* and *Mitchell* differ in at least one key respect—the state appellate court in *Penry* had not engaged

in harmless error review in the first instance. *See Penry v. State*, 903 S.W.2d 715, 759–60 (Tex.Crim.App.1995).

at 241, 367 N.Y.S.2d 213, 326 N.E.2d 787 (quoting *Fahy*, 375 U.S. at 86, 84 S.Ct. 229 and *Chapman*, 386 U.S. at 24, 87 S.Ct. 824).[8] *Crimmins*, therefore, demonstrates how New York law has incorporated *Chapman* as the standard for reviewing federal constitutional errors for harmlessness.

■ In the instant case, the Appellate Division did not cite federal precedent in disposing of the Confrontation Clause claim, instead citing indirectly to New York's interpretation of *Chapman*. *Gutierrez*, 248 A.D.2d at 295 (citing *Johnson*, 213 A.D.2d at 241, 624 N.Y.S.2d 123 (citing *Crimmins*, 36 N.Y.2d 230, 367 N.Y.S.2d 213, 326 N.E.2d 787)). As the discussion of *Crimmins* illustrates, the use of the phrase "overwhelming evidence of petitioner's guilt" could refer either to New York's non-constitutional error standard or to New York's incorporation of *Chapman* as its standard for examining federal constitutional errors for harmlessness, as "overwhelming" proof is required for both. *Crimmins*, 36 N.Y.2d at 240–42, 367 N.Y.S.2d 213, 326 N.E.2d 787. However, for AEDPA deference to attach to a state adjudication of a federal claim, our Circuit does not require state courts to cite federal precedent when disposing of that claim. *See Sellan*, 261 F.3d at 310–12. Therefore, the question is whether the Appellate Division reasonably applied *Chapman* or New York's equivalent interpretation.

■ When a trial court admits statements violative of the Confrontation Clause, it is "virtually impossible to determine whether a jury did or did not ignore an inculpatory statement." *Ryan v. Mil-*

ler, 303 F.3d 231, 254 (2d Cir.2002) (quoting *Latine v. Mann*, 25 F.3d 1162, 1167 (2d Cir.1994)). In *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), the Supreme Court outlined a framework for applying the *Chapman* standard for Confrontation Clause errors. 475 U.S. at 684, 106 S.Ct. 1431. "The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Id.* This inquiry depends on many factors, including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Id.*

■ Petitioner argues that the Appellate Division's classification of the 911 call's admission as harmless error was objectively unreasonable as (1) the three eyewitnesses directly identifying him as a third shooter all testified pursuant to federal cooperation agreements, (2) the noncooperating witnesses provided legally insufficient evidence to support the theory of the third shooter, (3) the ballistics evidence only supported the existence of two shooters, and the government's explanation of why the ballistics evidence did not demonstrate a third shooter was highly speculative, and (4) the prosecutor emphasized the tape as summation as "one of the most

---

8. In contrast, New York's rule for harmless error of a non-constitutional dimension is "not so exacting," requiring a different "level of convincement." *Crimmins*, 36 N.Y.2d at 241, 367 N.Y.S.2d 213, 326 N.E.2d 787. While also requiring "overwhelming proof of guilt" absent the error, the rule for non-constitutional error is distinctly less onerous than

*Chapman*: "[A]n error is prejudicial ... if the appellate court concludes that there is a significant probability, rather than only a rational possibility, in the particular case that the jury would have acquitted the defendant had it not been for the error or errors which occurred." *Id.* at 242, 367 N.Y.S.2d 213, 326 N.E.2d 787.

important pieces of evidence" corroborating the existence of a third shooter. According to petitioner, the 911 call was the only evidence beyond the cooperator testimony to provide independent corroboration of the prosecution's theory of three shooters.

Assuming without deciding that the 911 call's admission was erroneous, we hold that the Appellate Division's harmlessness holding was an objectively reasonable application of *Chapman.* Petitioner's argument fails because, *inter alia,* each cooperating eyewitness witness testified to his own violent history and to the cooperation agreement's nature, exposing the potential influence of those agreements to the jury; the cooperators' testimony established that the cooperators acted independently from one another in testifying against petitioner, as the cooperators testified to having had no contact with each other following their arrests; the pre-trial statements of a shooting victim, twice identifying petitioner to a police detective as the third shooter and as the person who shot him, were admitted into evidence though that witness unexpectedly failed to identify petitioner at trial; another non-cooperating bystander testified to hearing three different guns, including "fast" shots from semiautomatics and "slow" shots that sounded similar to a revolver firing; and evidence at trial showed petitioner carried a revolver that night. While the prosecution provided a somewhat thin explanation for the absence of ballistics evidence supporting a third gun, the admitted evidence did not directly contradict it. In addition, the prosecutor highlighted the 911 tape as only *one* of several important pieces of evidence that the prosecutor stressed during his lengthy summation. Given the overall strength of the prosecution's case, the Appellate Division's application of clearly established Supreme Court precedent governing harmless error review of Confrontation Clause

errors as outlined in *Van Arsdall* was not objectively unreasonable. *See* 475 U.S. at 684, 106 S.Ct. 1431.

## CONCLUSION

For the foregoing reasons, we hold that the Appellate Division reasonably applied *Chapman* in its harmless error analysis, and AFFIRM the denial of the writ of habeas corpus.